OPINION OF THE COURT
Patricia P. Satterfield, J.
Plaintiff, Jong Yuan Chien, commenced this action to recover the $6,000 down payment made to defendant, Tova Realty, toward the purchase of shares in a cooperative, a sale that was not consummated because of plaintiff’s inability to secure financing. Pursuant to the liquidated damages clause of the subscription agreement executed between the parties, *711 defendant counterclaims for $6,000 in damages and seeks $2,000 in attorney’s fees. Because shares in a cooperative are personalty and thus goods as defined in article 2 of the Uniform Commercial Code (Silverman v Alcoa Plaza Assocs., 37 AD2d 166 [1st Dept 1971]; Matter of Washburn v Goldin, 59 AD2d 682 [1st Dept 1977]; see also, Stewart v Stewart, 118 AD2d 455, 457 [1st Dept 1986]), the right of either party to recover is governed by UCC 2-718. For the reasons set forth below, this court holds that plaintiff is entitled to recover his $6,000 down payment.
FACTS[1]
On August 18, 1989, plaintiff and his wife, Chien Chang Woh, signed a subscription agreement to purchase 865 shares of stock from defendant, the sponsor of a cooperative conversion. Plaintiff agreed to purchase the shares for $60,000; 10% of the total purchase price, $6,000, was required as a down payment. Contemporaneously with the execution of the subscription agreement, plaintiff also executed an interim lease, consisting of a standard lease agreement and a rider, each of which was signed separately. Pursuant to the interim lease, plaintiff and his wife moved into apartment 16E, 42-22 Ketcham Street, Elmhurst, New York, on September 15,1989.
On October 12, 1989, the plan of cooperative ownership of 42-22 Ketcham Street, Elmhurst, New York, was declared effective; subscription agreements had been executed and delivered for 19.05% of the apartments on the property.[2] By letter dated January 24, 1990, Wallman Management Co., the selling agent for defendant, notified all purchasers, including plaintiff, of the March 14, 1990 closing date for the cooperative, and the February 11, 1990 due date for payment of the outstanding balance due on the purchase of cooperative shares. By letter dated February 23, 1990, defendant sent plaintiff a "30 day notice of default,” which stated: "unless *712 your default is cured by you before March 23, 1990, the downpayment you made shall be paid over to the Sponsor as liquidated damages and the Subscription Agreement shall be deemed cancelled and you shall lose your rights to purchase the apartment” (emphasis in original). Plaintiff failed to submit a letter of commitment, sign the proprietary lease or pay the remaining balance of the purchase price.
Plaintiff unsuccessfully attempted to secure financing for his purchase of the shares of stock in the cooperative. On March 7, 1990, the Williamsburg Savings Bank gave plaintiff a conditional cooperative share loan commitment, conditioned upon the sale of 35% of the apartment units; this condition was not met. On April 9, 1990, the Dime Savings Bank denied plaintiff’s mortgage application because of his short-term employment. Subsequently, the Chase Manhattan Bank, N. A., which had considered plaintiff’s loan application (at the request of defendant), denied plaintiff’s loan application because he had no credit history. Thereafter, on July 17, 1990, plaintiff commenced this action to recover his down payment.[3]
APPLICABLE LAW
At issue here is the operative effect of section 1 of the subscription agreement. That section, the default and liquidated damage clause, inter alla, states: "I agree that if I fail to pay the balance of the Purchase Price when due, the Apartment Corporation may demand it by written notice to me at my address stated below, by registered or certified mail, and if I do not make the required payment within thirty (30) days after the notice is mailed, all payments made by me hereunder shall be deemed cancelled (but said forfeiture shall not be in excess of 10% of the total Purchase Price) plus the actual cost incurred for any work ordered by me. Additionally, this agreement shall be deemed cancelled and all rights hereunder shall terminate. The amount of the payment made by me hereunder shall be retained by the sponsor, as liquidated damages and not as a penalty free from any and all claims hereunder”. As a general rule, a liquidated damages clause, such as this, is upheld, unless it is determined to be a penalty. The question presented is whether the clause at issue is an *713 enforceable liquidated damages clause or an unenforceable penalty; "it is not material whether the parties themselves have chosen to call the provision one for 'liquidated damages’ (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 425 [1977] [citations omitted].)
Liquidated damages constitute a sum which the parties to a contract contemplate should be paid to satisfy any loss or injury following a breach of the contract. (Consolidated Rail Corp. v MASP Equip. Corp., 67 NY2d 35, 40 [1986]; Truck Rent-A-Center v Puritan Farms 2nd, supra, 41 NY2d, at 423-424.) Under subdivision (1) of UCC 2-718, a liquidated damages clause is valid if the amount is reasonable in light of (1) anticipated or actual harm caused by the breach; (2) difficulties of proof of loss and (3) inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.
With respect to the first requirement, "a liquidated damages provision will be valid if reasonable with respect to either (1) the harm which the parties anticipate will result from the breach at the time of contracting or (2) the actual damages suffered by the nondefaulting party at the time of the breach.” (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 521 [1976].) A fixed sum which bears no relationship to the nonbreacher’s anticipated or actual loss is nothing more than an unenforceable penalty. (Howard L. Jacobs, P. C. v Citibank, 61 NY2d 869 [1984].) Since "equity abhors forfeitures [the court] will examine the [amount stated in the contract] as liquidated damages to insure that it is not disproportionate to the damages actually arising from the breach or designed to coerce the performance of a party.” (Fifty States Mgt. Corp. v Pioneer Auto Parks, 46 NY2d 573, 577 [1979]; see also, Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 223 [1934].) The fixed sum of 10% of the purchase price contained in the liquidated damages clause at issue bears no relationship to defendant’s anticipated or actual loss.
Defendant did not offer one scintilla of evidence to show that "said forfeiture * * * of 10% of the total Purchase Price” was reasonable as to either the anticipated or actual harm sustained by defendant as a consequence of plaintiff’s breach; nor did defendant make any attempt to show, let alone prove, actual damages. Indeed, in defense of the validity of the liquidated damages clause and defendant’s alleged right to retain the down payment, defendant relied solely upon the law applicable to a buyer’s breach of contract for the purchase of real property, where the buyer does forfeit the down *714 payment. As set forth above, the law applicable to real property has no applicability to the purchase of cooperative shares, which are personalty. (Silverman v Alcoa Plaza Assocs., supra.)
Nor was any evidence introduced to show that the remaining two prongs of the reasonableness test of UCC 2-718 (1) had been satisfied, i.e., reasonable in light of "difficulties of proof of loss” and the "inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.” (See, Truck Rent-A-Center v Puritan Farms 2nd, 51 AD2d 786, 787 [2d Dept 1976] ["If the damages which may result from a future breach are not easy to compute, the parties may agree upon a liquidated amount and their agreement should control”].) Having relied solely upon the law applicable to real property, defendant satisfied none of the requisites for an enforceable liquidated damages clause under UCC 2-718 (1). Accordingly, this court concludes that the liquidated damages clause at issue is nothing more than an unenforceable penalty clause designed to compel performance, not to compensate for anticipated or actual injury caused by a breach. (See, Fifty States Mgt. Corp. v Pioneer Auto Parks, supra.) Plaintiff thus is entitled to recover the $6,000 being retained by defendant as liquidated damages. A judgment hereby is granted to plaintiff against defendant in the amount of $6,000, plus interest from August 18, 1989. Defendant’s counterclaim for damages in the amount of $6,000 is dismissed for failure to prove any damages, and its application for attorney fees is denied.

. The recited facts are based upon evidence adduced at the bench trial of this action. Plaintiff appeared pro se and participated in the trial through the assistance of a Mandarin interpreter.

. Pursuant to the offering plan, the sponsor could declare the plan effective, if within 15 months after the date the plan was accepted for filing, written subscription agreements had been executed and delivered for at least 15% of all of the apartments on the property by bona fide tenants in occupancy, or bona fide purchasers. Defendant’s noneviction, cooperative offering plan was filed with the New York State Department of Law in July 1988.

. This action initially was submitted to compulsory arbitration. On January 29, 1991, an arbitration panel held a hearing, resulting in an award in favor of plaintiif in the amount of $6,000. Defendant then filed a demand for a trial de nova.